Good morning, gentlemen. You are the only case we've scheduled today based on the petition for re-hearing. We, of course, are very familiar with your case and the facts, the numbers. We have a lot of questions about numbers, but we'll try to keep you within the framework of a half an hour, maybe 15 minutes each side. Obviously, Helen can carve out some of that time for reply, argument. But as I say, we are very familiar with the facts, so I would hope that you'll be able to focus your arguments specifically on the legal issues that you presented in your briefs. And when you come before us, please identify yourself and who you represent. Good morning, Your Honor. My name is Melvin Burks. I am of the firm of Deutsch, Levy & Engel, and I represent the appellant, William Marks. This is my motion for reconsideration. This Court stated in its opinion that the record supports the trial court's finding that William Marks' income in 2008 was approximately $260,000, and that his maintenance obligation as determined by the trial court was $100,800, which therefore leaves him $160,000 per year to maintain his household and expenses. It's our position that this is mathematically incorrect. Assuming $260,000 per year is, in fact, his gross income, and our brief clearly points out that in our opinion it's not, but assuming the $260,000 is his gross income, and the Court is consistent with that finding, he does not have $160,000 available after the payment of maintenance to maintain his household and expenses. Included in that $260,000 of gross income is the money given to him by his parents in 2008. Now, Mr. Marks' parents gave him monies, and the only real testimony, the only testimony concerning that monies was the testimony of the accountant, the testimony of Mr. Marks, and particularly Respondent's Exhibit 8, which broke down the specifics. So, Mr. Burks, let me ask you a question. Are you saying that the income that Mr. Marks gets from his parents for these last several years, that that should not be counted as income? In my brief, I did say that. However, in my argument, I'm breaking that away in a little bit more of an explanation because those monies were targeted and specifically given for specific purposes. And that purpose was the children's? Primarily the children's education. Respondent's Exhibit 8 was a complete breakdown of all the monies when they were given. The accountant kept the record of the monies given from his parents to him. I understand that, but maybe what I'm getting to is, are you saying then that those monies shouldn't be counted because they can't be counted on as being a continuing source of income? I mean, is that the ultimate place that you're going? No. I certainly don't want to back away from that position because, to some extent, that was my position in my brief, but there's more to it than just that. Even if we were to include it as income, and for the sake of my argument today, I am acknowledging the fact that the court accepted the fact that the trial court's finding that it represented income. What I'm saying is, however, that if we look at that income, see, the court made a finding, this court made a finding, that after the payment of maintenance, there was $160,000 left for him to, I believe I can quote this, maintain his household and expenses. And the fact of the matter is, there was virtually nothing left. And I'm going to explain to you why there was nothing left, and I think the record supports everything that I'm going to say here. Exhibit 8, Respondent's Exhibit 8, broke down the specifics for which that money was given. Ninety percent of that money given over the period of the 14 years according to Exhibit 8, and Exhibit 8 was not contradicted at all at the trial of this cause. Ninety percent of that money was for purposes related to the children, primarily their education, with some of that money also to cover his attorney's fees for all this litigation. But 90 percent of it was given. And in reality, in talking about 2008, the year 2008, which is the year that the court based its findings on, in 2008, Exhibit 8, Respondent's Exhibit 8, reflects that a total of $64,320 was given to Bill Marks between January 1st of 2008 and August 19th of 2008. And of that $64,320, 61,220 of it, virtually 95, 98 percent of it, were monies given and specifically earmarked for specific purposes. You've got to help me with this. I'm sorry. There are a lot of numbers going on here. Let's put it in some legal framework. Okay. So he had an obligation under the court's order to provide for his children's education, et cetera, correct? Right. And instead of him paying for it, his parents did. Well, but his parents, and here's the point, his parents paid for it by giving it to him, and then he paid it out. His parents didn't pay for it separately. So what's the difference? Well, no, the difference is this. The trial court and this court considered it income to him and then showed it. So why not? Let me make the point. You considered it income to him. I grant that. I don't buy it, but I grant it. Okay? The court found that. Once they gave the money to him, it was earmarked. So the money specifically went out. Now, this court made a fine. When you say earmarked, what do you mean? So his parents, how is it earmarked? And I still really don't understand why it's not, why that makes a difference. I'll get to the point. If you give me a couple of seconds, I'll get to it. Exhibit H shows exactly what the money was given for and the dates that the monies were given. And in 2008, it shows $5,000 for Todd's tuition was given to him on April 29th. $3,000 for travel to, excuse me, travel for Bill, the appellant, and his son Todd to colleges. $52,000 specifically was given on July 2nd for Todd's tuition. $1,600 advance and another $1,220 advance for testing for Todd. $61,220 of that money was given to him and earmarked. Now, the court found that he had $260,000 in income. It said $100,800 we know goes to maintenance. That leaves him $160,000, a little less than that, to maintain his household. But included in that income, that $260,000, was the money his parents gave it to him. But he has an obligation to pay. I understand that. He has the obligation to pay so somebody gave him, his parents gave him the money. So why isn't that income to him? I'm not arguing that it's not income. I disagree that it's not income. I made that point in my brief. But I'm not arguing that it's not income. The court said in its opinion, this court said in its opinion, that he had $160,000 left for his maintenance of his household. And I am showing you that $61,220 of that $160,000 was earmarked for specific educational expenses of the children. You keep using the word earmark. Are you saying in specific language that we should subtract the $6162 from the $160,000 and that's the number that the court should be working with? Absolutely. Well, I mean, that's not what you said. I'm trying to, Judge. Well, it's pretty simple to say that. You're just saying that we should subtract the $61,622 from the $160,000 and that's the number that we should be working with. Well, as a starting point, yes. Okay. Well, that's not what you said, sir. And when Mrs. Tice asked you to be very specific, it's very important to us if you're as clear as you can. It's very important to me as well. Probably even more important because this is my client. The $61,220. So what we said is $160,000 to maintain his household. That's what you said. And I think what you're saying is. And that $61,220 clearly went out. Could I make a comment here, please? I'm sorry. Okay. So we said he has $160,000 a year to maintain his household. And you're saying $60,000 is education expenses. Specifically earmarked by his father for educational expenses and used for that purpose. So he didn't have $160,000 available beyond the educational. He had $98,000. See, I really think we're all having a hard time with that argument. So we're talking about his life, his obligations. One of his obligations was the education of his children. And he spent money on the education of his children. So that's part of his obligations. I understand that. The court made a specific finding that there was $260,000 income, that he paid $100,000 in maintenance, and therefore he had $160,000 available for his own personal expenses. And I'm explaining to you. He did not. He did not. He had $160,000 less $61,620. That's what you're saying. That's what I'm saying. So we're down to $98,000 that's left for his personal expenses. If that were it, then basically we've got $98,000 for him and $100,000 for her. It's a 50-50 division. Fine. But then there's one other point. And the record showed that over a period of the years, when he wasn't making sufficient monies to pay the maintenance of his ex-wife as well as his personal expenses, what he did was borrowed against his assets. Can I ask some questions about that? Yeah. I can't see from the briefs, and I have not read the whole record yet. I have to say that. I'm concerned about some of these numbers. I've tried to do the math. I played with the calculator on my computer all day yesterday trying to do this math. The numbers kind of stick in my head. So please help. And this is a genuine question. I see that we have information about his income from 07 and 08. I assume somewhere here we have information about his income, maybe his income tax statements, from years between 2001 and 2007, right? I believe so. Okay. So we must know he did generate income between 2001 and 2007, didn't he? Very minimal amounts of income. And the record reflects that, very minimal amounts of income. Do we know? The specifics of – well, it depends on how you define income. If you're defining income – Let's look at income taxes. This is what I understand. This is what I understand. This is my question. His income taxes show very little income. My concern is this. We're told in 07 his income, the way the court calculated it, was about $400,000. In 08 it was about $280,000. So what I'm wondering is I don't know what his income was those other years. What I'm wondering is if he's making $280,000 or he's making $400,000, why did he have to borrow $2 million to support himself? He's not making those kind of monies. The court made those findings based upon – including monies that didn't show in an income tax return. They weren't there because they were monies either loaned or gifted to him. And it really, at this point, doesn't make a difference. My father. I know you may not agree with how the court came to this conclusion, but the court found that in 07 his income was $408,000. In 08 it was $260,000. Now, my question – you make a statement in your briefs that he's $1.9 million in debt because of his obligation to his wife. I don't see where that's coming from. If he's making – if he's generating income through the years. His tax return does not reflect generating any income at all. He makes virtually nothing from his business. The only income that is shown is interest income. And dividends. And dividends and monies he got from his parents. The monies he got from his parents over the years in Exhibit 8 shows that were all earmarked for specific purposes. And the dividend and interest income. He made that through the years. He made some dividend. He made $23,000 in dividend interest in 2008. It wasn't much different in prior years. What he had to do is he had $4 million back in 2001 when there was an adjustment of the obligation. He had $4 million in 2001. A court finding to that effect. Since that time, aside from monies given to him by his father, he didn't make any money. He had money interest income. But as my brief explains, in addition to the interest income received, he had the interest he paid out. Because his interest income in 2008 was $98,000. The monies he paid out in 2008 on interest was $77,000. So you're saying that the court considered the interest income that he took in but did not include in its calculations the amount he paid out to meet his obligations on the loan. Is that part of your question? Right. And what I'm trying to show. In the trial court in its order, let's see if I can find it. When analyzing his living expenses, I think is the term, right? Include that amount. Yeah. But they did. But there's a little mistake here. And if I can get just to this point. No, we're not going to let you do this. I have one very simple question. Yes, sir. I think it's a simple question. Sure. For a simplistic person who, you know, two and two is four, and that's about the extent of my abilities in mathematics. Did the trial judge in this case abuse her discretion? Absolutely. Here's the question. I'm sorry. In making a determination that Mr. Marks was capable of paying the maintenance that you were. Yes. And if you'll give me two minutes, I will tell you exactly. Okay. I'm listening. The court found he made 260. The court found, and appropriately, I mean, the amount was correct. He has to pay out $100,800. That leaves $160,000 for his personal expenses. The evidence reflected, it's in 2008, $61,000 of the money that was included as part of his income, in reality, went right out for the education of the child. $56,000 of it was for tuition plus $5,000 that they put down. So $61,000 went out right for Todd for the tuition. That brings that $160,000 that was left for him down to $100,000. Now he has to pay $75,000 of interest on the loans he's been making against his assets over a period of the 14 years. $75,000. He earned $98,000 from that interest. He paid out $75,000. He only really netted $23,000. So if the $75,000, wait, you said you'd let me finish. No, no, no, no, no. I told you I wasn't going to let you finish before. Oh, that's true. Anything you've just told us, that was all presented to Judge Methink, correct? Right. How did she abuse her discretion? Well, I'm telling you, if you let me finish, you'll see there's an abuse of discretion. Was that disclosure? I'm getting there. Go. If the interest expenses of $75,000 is subtracted from what's left, the $98,000, you're down to $23,000 a year. So after payment of the educational expenses of the child and the payment of the interest on the money he borrowed, he has $23,000 left. He doesn't have $160,000. He doesn't have $200,000. He has $23,000 left. Then he has to pay taxes on the $23,000, excuse me, on the $100,000, whatever his income was, and the exhibit reflects his taxes are $20,000. Exhibit, I believe it's 14. So Mr. Burks, let's cut to the chase here. According to your argument, he really only had $3,000 and something dollars left. That's all he had left. As I read your argument, that's basically how you have broken it down. Absolutely. You take out the $61,000 for the kids, for the children's expenses, the $75,000 that he had to pay in interest income, the $20-something thousand that he had to pay for taxes or whatever that number was, and that leaves him with a net amount of $3,000 something. That's your mathematical argument in a nutshell, is it not? Absolutely. The court, this court found that he had $160,000 left for his expenses of his household, and the reality is after payment of those three things, the education, the interest on the loans that he had accumulated over the years, and the taxes on that money, all he had left was $3,591. You're doing this math, but he testified, William testified that his monthly living expenses are, let's go back here. After deducting federal tax and health and hospitalization premiums, William's 13.3.1 disclosure statement sets forth his income of being $8,000. He stated his total monthly living expenses are $17,820, not including maintenance payments. That includes the interest payment on the loans and all the other outstanding bills, debts, and obligations he had. So he says, I need $17,000 every month to meet everything including my loans, right? If that's what the exhibit, I don't have the exhibit. That's 12 times 17. I'm coming up with 186. It's pretty close. The fact of the matter is. So he testified that's what he needs, including his debt service, and it's, I mean, my math is terrible. But how is that an argument in response, how is that a response to my position? I don't have to respond to your position, sir. I'm telling you, what your client said was, to meet all of my obligations, all of my obligations, it costs me every month $17,000. What's the difference what it costs to meet all of his obligation in the argument being made here? I'm dealing with this court's finding of $260,000, less $100,000, leaves him $160,000 to maintain his obligations. And we've shown that $61,000 of that $100,000 went directly for the kids. It was included in income because the court decided to include the money received as income. But the money was earmarked and it all went out. $61,000 went out. Another $75,000. Can you explain to me, sir, where this number, his testimony comes from, where he said everything, everything. I mean, I don't know if it says everything, but the court says that he testified that his total monthly living expenses, not including maintenance payments, is $17,820. When he testified, now, remember, the question was, did the court abuse his discretion? If he took the stand and said, I need $17,000 every month, and the court said, okay, here's your $17,000, how did the court abuse her discretion? She's placing it on the testimony of the witness. The court didn't make an order relative to his expenses and needs. The court was there for the purpose of determining her expenses and needs against his income. Now, what I'm arguing is that the finding of the court, which was acknowledged by your honors in its original brief, the findings of the court show he had $160,000 left for his personal expenses. I'm showing that $61,000 of that was already allocated when it was given to him for those purposes. That brought it down to $98,000. And the court ignored, the trial court and the appellate court, ignored the $75,000 worth of interest income that was being paid because of loans he made over a period of the years, ignored that, bringing it down to $23,000. So once the educational expenses and the interest is paid, you've got $23,000. You take taxes off of that, you've got $3,000. That's left for him to pay for his rent, for his mortgage payments, for his food, for his clothing, for virtually everything. His utilities, everything. There's nothing left. What do we do with his testimony that he needs $17,000, whatever it is? His needs are irrelevant to the issue, Judge. It's totally irrelevant to the issue. The issue is one of what's left for him. The needs would mean something if the court would accept the fact that he can't possibly live on $3,593, regardless of his needs. He couldn't possibly live on that. Let me ask you another question. On $3,593, I mean, you know, there's cutting back and there's cutting back. But I mean, it's ridiculous. Let me ask you another question. Yeah. I understand that in 2006 or so, William came in and asked the court to reduce the amount. 2001. No, no. There was a petition at some point where there was a temporary reduction. That was during the pendency. In the maintenance payment. During the pendency. Let me just finish. Yes. That went on for about a year and a half or so, where the maintenance payments were reduced to $5,000. Right. Is that correct? So after, and then he came back in, but culminated in this. No, that's not exactly what happened. What happened in that, after the $5,000 temporary amount, when was that ratcheted back to the $8,000? Oh, what happened was the petition for reduction was filed by us, I don't remember, I think it was 2007. Shortly afterwards, we went in on a motion to try to get some temporary relief because he was paying, at the time, $11,000 a month. Between $9,000 and $11,000 a month. And the court granted the relief temporarily without prejudice and reduced it to $5,000. And during the balance of these proceedings, it was all the same proceeding, continued to pay the $5,000. But then after the trial, ordered at $8,400 and then made it retroactive. That's a question I'm getting to. So the $8,400 that the court ordered was retroactive to 2006. Whatever date that order was. Sometime in 2006. Right. It was all part of the same. So it was retroactive to 2006. So as a result of that. He's got big arrears. He has an arrearage plus the additional $3,400 per month that he is now required to pay. He has an arrearage of that differential between the $8,400 and the $5,000 retroactive to 3 years ago. 2006. Yeah, or whatever, something of that nature. Now, the only way that Mr. Mr. Marks could possibly get any money from the assets that he has, which have been reduced substantially because of the debt against it, is to sell those assets. He's at the point, and the evidence was presented, that he can't borrow any more monies from those assets. And the net amount of those assets is about a million dollars. But $450,000 of that million dollars is a loan made by him to the company he runs back about 10 years ago. Sir, let me ask you another question. Isn't your argument essentially yes to respond to Justice Karnazes' question? Yes, the trial court abused her discretion because her finding that he had X number of dollars available didn't square with the math. Yes. Is that your argument? Well, that's the argument for this brief, yes. That is the basic argument of this brief. The math shows, and this Court's finding says, and this is motion for reconsideration, and I'm trying to point out, where this Court's finding that he had $160,000 available. I guess he had it available except that $61,000 of it was given to him for particular purposes. And the Court forgot about the $75,000. We understand that. But was the $61,000 that was given to William by his parents for the tuition shown as both income and then as an expense he had to pay? It was shown as income and an expense? It was shown as income by the trial court and the appellate court's determination of what part of his income. It was part of that income. But was it also shown as an expense? No. It was shown as income. We showed it as an expense at the trial. But the trial court did not consider it to be an expense. The trial court apparently ignored it. My question is very specific. I understand. I don't know your answer. I still don't understand. He testified, this $17,000 is what I need every month. Okay. Now, is there some place in the record here that the court said the educational expenses of the children are not going to be considered his expenses? No. No. The trial court, well, the appellate court seemed to, you seemed to, I got the implication from your opinion that you thought that the monies were given to him and then the father paid these educational expenses separately in addition to it. We didn't think that at all, sir. We know what we think. What Justice Tice is asking you is really specific, and it is. Well, I can let her phrase it again because you didn't answer the question. I'm sorry. I think that's very crucial here. I'm trying to figure out, did the trial court count that twice? Did she consider it as income and then not think of it as an expense that he had to pay? I think they did that. That's a really narrow and specific question. Yes, she did. And yes, she did also by excluding the interest he had to pay on the debt. I'm not answering your question about the money. And let me ask you, Exhibit 8 that you were reading to us, it's not just tuition. No, it's. It's things like flying Bill out to see his kids in college and things like that, right? No, well, he took the kids to college. I'm just looking at 2008. I assume you're referring to it because that's what we brought up. That was tuition of $5,000 and tuition of $52,000. It was $57,000 in tuition. Then there were air tickets for Bill and Todd. So the majority of that is tuition as tuition, which was his obligation. I'm not saying it's not his obligation. I'm just saying that that money was given for those purposes. That money wouldn't have been there other than those purposes existing. So that money came in, but it also went out. And if the court says that he has $160,000 less left to handle his household expenses, well, $61,220 of that is. Was part of his household expenses. We understand that. And $75,000 beyond that was interest on the money's. The interest income was included by the court. But the interest he paid on the loans against that income was ignored. I mean, that's really the point. Let me ask you another question. If the grandfather had paid the money directly to the college and bought the plane tickets himself and the loan or the gift from the grandparents had never passed through William's hands, you're saying that in that situation it would not and could not have been counted as income? Yes. And therefore, although it passed through William's hands, it should be treated the same way by the trial court. Isn't that what you're really saying? Well, that's part of it. That's part of it. What's the rest of it? Well, part of it is that even if we do consider it that way, we certainly have to subtract it from the expenses and coming down to what's left. Why? Because the courts. Wait. The courts. That's my question. Why? Because the appellate court in its opinion stated $260,000, $100,000 out, that leaves him plenty of money to meet his responsibility. And one of his obligations is to educate his children. So he has $60,000 to educate his children. Okay. How about $75,000 to pay the interest on the loans against the money that produced the income of $98,000? Because if we subtract, if you buy the fact that, and the exhibit is there, the $75,000 was paid out in 2008. $98,000 came in in interest. $75,000 went out in interest payments. He only netted $23,000 from that. The $23,000 is all he netted from that. I mean, if we subtract the $75,000 and we subtract the $61,000 and then we take taxes off of it, he's got $3,591 left. That's all. So these two expenses plus the taxes eats up virtually all of the money that this court found he had available for his expenses. So in other words, you're saying the trial court's math was wrong. Isn't that your point? I'm saying that the trial court abused its discretion by ignoring two things. Three things, actually. By ignoring the interest paid on the loans against the assets that produced the income of $98,000, they ignored that, and by ignoring the fact that $61,000 of this money was given for the purposes of education and went out, and ignoring the fact that there were taxes on this money. See, this was a gross amount. So if we take the taxes, those three things off of the monies that this court found was available for him to meet all of his expenses, we have $3,591. We haven't gotten the food. We haven't gotten the mortgage payments. We haven't gotten health insurance. I mean, he's a sick man. The record reflects he has diabetes. He has heart condition. None of these expenditures, there's only $3,591 available, assuming the court's determination of income is correct. That is a major abuse of discretion. So basically, you're saying that the court abused its discretion because she considered two or three items, the tuition, the $61,000. Ignore that. The $75,000. The $20,000. She considered three major items in the total hold that she should not have considered in coming up with what he had. No, she ignored those items, Your Honor. What it is is she didn't. No, but she included them in the totality of what he had available to him. That's what she did. And you're saying. She included it as income. She included the income derived from those, but she did not include the outgoing, the fact that $61,000 of that money went out for education. That $75,000 of that money was interest income, and that $20,000 of it was taxes, and that really all he had left was $3,000. And that's all he has left based upon that finding. And if we accept the finding of the court, which this court accepted, that his income was $260,000 and his expenditure for maintenance was $100,800, that leaves $160,000, and those three obligations that were clearly presented to the court eat up virtually all of that money. There's nothing left. Let me ask you one final question. What is the standard by which we are reviewing the trial court's action? Isn't it abuse of discretion? Abuse of discretion, absolutely. And so that's a pretty steep hill to climb. I understand that. In order for us to find abuse of discretion, you have to clearly and unequivocally set out for us, since this is all based on mathematics, how it is that the trial court abused her discretion. Isn't that what you have to do? That's exactly right. And I believe I've done it. Can I ask you this? This is what I've been looking for. In the blue brief, there is recounting the testimony of the accountant, Mr. Katch. Mr. Katch testified that he believes Williams' budget is about $20,000 a month. Is what? I'm sorry. About $20,000 a month. Williams' exhibit number 11, now we're back to this, Williams' exhibit number 11 discloses that his monthly living expenses are $17,820, that's the number that I mentioned before, inclusive of taxes, educational expenses, and loan repayments. Now, according to this brief, the financial disclosure statement of Williams includes all of those things. I understand. Repayment and education and all of his other living expenses. And he said he can do all of those things on $17,000 a month. So when the court does the math, doesn't it come out to the same place? $17,000 a month is about $190,000, I guess, about $200,000 a year. Isn't it? $1,770 and $204,000 a year, which is, that alone is $44,000 more. So if he had that $44,000 more, then he would have a total of approximately $48,000, which certainly wouldn't meet his expenses, and the reality is she would be getting basically two-thirds of the available income that he had. And I don't know that two-thirds is appropriate. We're just trying to – I think we all have this feeling. Yes. We're trying to hold on to some numbers. The numbers are moving everywhere. Your brief has one set of numbers. The blue brief has another set of numbers. My terrible math comes up with a bunch of numbers. We're doing the best we can. I understand. What we're trying to do is find a number and stick with it. I'm sticking with what he testified to, that $17,000 a month, including loan payment, educational obligations, and all of his other living expenses, was just fine. Rather than your math, you seem to be going around. I've got exhibits supportive of everything I've said, and it's really very simple. There are three things, three expenditures off of that $160,000 that this Court found was left, and those three expenditures eat up virtually all of it, just those three, and it's supported by exhibits and testimony. The Exhibit 8 reflects the specifics of the money for college, and I don't have it in front of me right now, but there is an exhibit that – Exhibit 13 and 14, I believe it is, reflect the specific $75,000 in interest payment that went out. It's all been presented. It's there. Exhibit – the Affidavit of Income Expenses that you're making reference to reflected the tax obligation. It's right there. If we just simply subtract those three things from the $160,000 that the Court said, this Court said, is available, is sufficient to meet his lifestyle and etc. It comes up $40,000 short. It's impossible. It's impossible. If that's not an abuse of discretion, I don't know what is. How do you maintain these conditions? $40,000 when – in this case, according to your math then, he's $40,000 short each year. Of the $48,000 would be his income. Let's hear it from your opponent now. Good morning. I'm Alan Sobel. I represent the Appellate Petitioner, Carey Marks. Your Honor, the arguments presented by Mr. Marks' attorney have intentionally limited the focus of what the Court considered in terms of his access to funds. The access to funds far exceeded the $260,000. How so, Mr. Sobel? Thank you for asking. According to Petitioner's Exhibit 9, in 2006, he had deposits and withdrawals from his personal account at Chase of $680,000. I don't understand this. Please, don't tell us the numbers. Tell me the legal issue here. I don't understand this. Can you briefly say, he has these two deposits, and then you go on and you don't explain to us what that means. Okay. I'll start out with what it means and then I can back it up with the facts, if that works better. According to Tegeler, when you have unexplained deposits and withdrawals from a checking account to the extent that they exceed your, quote, net income, it is treated as additional income. Mr. Marks, in 06, 07, and 08, had deposits and withdrawals into his Chase account that were not explained or accounted for, far in excess, in extreme excess. What are you really saying, Mr. Sobel, that his testimony regarding what he actually has available wasn't true? Isn't that what you're really saying? Yes. Yes. And I think if you read the trial court, I mean, I don't, I'm sorry, but this is really what you write in your brief. You say, he deposited $500,000, and then on another day he did something else, and you don't explain to us what meaning does that have. Okay. If you say to the court, judge, when you are making this determination of what his assets are and his income, nowhere here does it show the Chase checking account. Judge, please look at the Chase checking account. Yes, Your Honor, that was part of my closing argument, and it's for a very good reason that Judge Mathine specifically noted in her decision what the deposits were in 07 and 08. It was not without reason that she selected that as a relevant fact to recite. There was extreme and extensive testimony on this at trial as to the amount of money that was going in with no explanation of where it goes out. But what's significant is when you talk about money to support a lifestyle, you have deposits in 08 of approximately $384,000 against respondent's testimony. That is $230,000 in expenses. Could somebody say, all right, Mr. Marks, you're on the stand, okay? You're under offer. Here's your bank statement. There's a deposit in $380,000. Where did that money come from? Did anybody ever ask him that? He was asked about where, when he liquidated accounts, where it went, and he wasn't certain. He was just guessing, and he wasn't really positive. It's a specific Chase account. Did you ask him, I have this Chase account. It says you have $500,000 in it at one point. Where did that $500,000 come from? Did you ask him that question? Did I ask him the question, where did it come from? No, Your Honor. I asked him to authenticate the statements that he produced, and he authenticated them. I asked him and I asked his accountant both if the amount of deposits going in and the withdrawals were approximately the same, what, went in each month, went out each month, and the answer was yes, okay? And the amounts and how the monies were expended and where they came from were unexplained. But the court did note that in 2007 alone, and talking about lifestyle and his expenses, William Marks had credit card payments, not indebtedness, payments made in 2007 of $97,000. What does that have to do with what we're talking about? Yes. What does that have to do with what we're talking about? Very well. In Tegeler and Baumgartner, which is recited in my brief, and Baumgartner was the first district case, the courts found that excess withdrawals, deposits and withdrawals unexplained, they are unexplained, that are in excess of, quote, net income are treated as additional income. So basically you're saying that Mr. Marks has more money than he's testifying to. I know. And is that correct? That's the first part of my question. So is that yes or no? That would be yes. Okay. And so the argument made by your opponent that the $61,600 and whatever it was shouldn't be counted and the $75,000 and the 20-something shouldn't be counted, you think that's all irrelevant because there was sufficient additional funds left there for the court to come to the conclusion that he could fulfill his obligations. Absolutely. That is correct. Another yes. But I must state parenthetically that Judge Mayne, in her decision, expressly notes what his 13.1 discloses, what his monthly nut is, which includes all of the things that shouldn't be counted. It includes health insurance. It includes taxes. It includes tuition. It included all of that. That was all part of it. So you're basically saying the judge considered all of the things that Mr. Burks is arguing that she didn't consider. You're saying she did and she still came to the conclusion that let me finish my question. Yes. And she still came to the conclusion that he could, in fact, pay the $8,400 a month that she ordered him to pay. That is correct. That is absolutely correct. In addition, you'll note in Judge Marthein's opinion that she chooses to comment on his testimony about his lack of income from his corporation. She notes that he states he makes nothing from his corporation, he chooses to make nothing from his corporation, and that's still his position as of the date of his testimony. The answer is yes, I choose to make nothing. What did we do with that? All right. Of what relevance is that? Under the case law, when you willfully make nothing, when you have an obligation, using child support cases as an analogy, when you are willfully underemployed, because he had testified he could have made 150, his job was worth $150,000 in the market. So he's willfully underemployed. We're talking about maintenance here. Let me – is – Yes. And you're mixing apples and oranges. To an extent. Maintenance and the standard that the Court is using with respect to maintenance, is there a difference between what the Court looks at for maintenance and what the Court looks at for child support? I do understand. So, I mean, you're mixing apples and oranges here, and it's very confusing to me. I may be mixing them, but I'm trying to make a parallel analogy, Your Honor. I readily acknowledge that some of these cases apply to child support that I've cited, but they have application to maintenance. The rationale and the reasoning is the same. So, Your Honor, the fact that the – Counsel, your first argument about this money going in and out of accounts, the Court did not include any of that as income, correct? Not in using, quote, available income for the purpose of calculation, correct. They did not. Judge Mathine did not. She used the 260, but she was cognizant of where it made findings. What findings did she make? She just made findings about this money coming in somewhere, I think she said. About the deposits, the credit card. She doesn't include – she doesn't use it anyway. That's what we're struggling with. I read it. I guess we're having a hard time, gentlemen, because we don't – I guess we don't see cases quite like this. Usually lawyers stand up and they give us the facts, they tell us the law, and they apply the law to the facts. And we're having a hard time. We're not hearing law, and we're not hearing application. So you say $579.42, and then you move on. I want to know what relevance. Where do we – how do we use that fact? And you're not telling me. So I – so the Court says, okay, you made these deposits, but then the Court does not use it in terms of income. So why – But the Court was cognizant, aware, could have considered it, was aware of it. And, Your Honor, if you use – if we go back and you say recite law, which I would like to do, if we talk about the Tegeler case, for example. I have that here with me. Just one second. In Tegeler, the Court held – and this was a 2006, it was a 2nd District case, and it was cited and distinguished factually in Baumgartner, which is a 2009 1st District case. But the holdings were that to the extent that unexplained deposits into the checking account of the respondent husband exceeded his net income, quote, we agree that the source of such money is unexplained and should be considered as an additional resource for child support purposes. Now, I grant you this is a child support case, but it's been considered the high concept. And the rationality is that unexplained deposits and withdrawals, lifestyle. But the trial court did not do that. Pardon me? The trial court did not do that. I do believe that Judge Mathine did consider it. Your Honor, in closing argument, as well as in examination, it was abundantly clear to the Court that we have, as counsel was arguing, that his assets are diminishing, that his expenses, his real expenditures, are double, if not triple, to what he claims they are. He's claiming $213,000 annually, and yet in two of the years he has deposits almost three times that amount. And withdrawals, they're unexplained. Was he drawing down his assets? We don't know. They're unexplained. But he had the available funds. Was that included anywhere in Judge Mathine's order? Does it say? I didn't see that where she says something along the lines of, the defendant's testimony belies the fact that he has blah, blah, blah, blah. I don't see that anywhere. That's your argument. That is correct. And I understand that that's an argument that you're making. That is correct. But what relevance does that have on the numbers that the trial court used in coming to her determination that Mr. Marks could pay $8,400 a month? That's all I want to know. What is the number that she used, and how did she get there? Your Honor, all I can say is the judge recited that there was $260,000 for the purpose of calculating child support. But the judge also considered that was for the purpose of calculating child support. But in terms of media's needs and expenses, she can consider other issues and other assets and other funds. But you don't know whether she did that or not, do you? No, I do not, Your Honor. Okay. Anything else? I have one other question. Speaking of other issues, we assume, Mr. Sobel, that you have read the Rule 23 order that still stands at least at this point in time, and also the dissent. Yes. How do you respond to the dissent? Your Honor, I'm glad you asked me that. In responding to the dissent, I thoroughly agree. Because, Your Honor, had the issue been briefed, had the issue that the court raised been briefed, you could have tracked how the $8,400 was arrived at mathematically by Judge Mathine deducting out line items where Carrie testified that her actual expense to date is less. She deducted those out, and on a line item basis, you could have come up with a mathematical precision of $8,400. You are suggesting, then, Counsel, that the dissent had it right and the majority had it wrong. It's my obligation to be candid and honest. I'm not going to beat around the bush. Yes, Your Honor, I do. Okay. Yes, I do. Thank you. Anything else? I think that concludes my presentation, Your Honors, other than to state that if you talk about, because the whole argument by Mr. Burks has been the numbers, the available money to meet his needs. And the fact of the matter is, Your Honor, that had this court consider the exhibit showing the deposits and withdrawals for lifestyle, after paying the maintenance and after meeting all of his expenses in 2008, Mr. Burks had $107,219 left over, surplus, over and above his needs, over and above the maintenance. In 2007, he had $229,155 left over, after meeting all of his needs, after paying maintenance. I think that is quite significant inasmuch as Counsel complains that his income has diminished because his assets are reduced. Why are they reduced? Thank you very much. Thank you. Yes, a few seconds, please. So can you explain where this money came from? Where did these big deposits in the bank come from? I don't believe that the record reflects that those deposits are anywhere near those amounts. It certainly wasn't. Let's say they're $25. Where did the money come from? Pardon me? Well, who cares how much it was? Let's say it's $150. Where did the money come from? The only monies he had coming in, the only monies that he had coming in, was the interest income that he received, was the monies he got from his mother and father, was some dividend income, which is shown. The court made a finding of $23,000. And he got a refund on taxes, which the court found as part of his income. This isn't something else. $30,000 because the corporation got a refund of taxes paid. So giving him the money back is basically giving back his own money. So I don't know how that could possibly be considered part of income, but the trial court did found that as part of it, $260,000 in income. But this was not an issue before the court, that there was some concern that he was hiding income. There might have been some concern, but I didn't see anything brought up in the court proceeding. Certainly the judge, I mean, we're here to look at the judge's decision. And the judge's decision is basing the support, the maintenance, totally upon the finding of $260,000 in income and $100,800 of it being paid out in maintenance, leaving $160,000. And just at that. And then ignoring, of course, as we've said, the fact that $75,000 was paid out. Can I ask you a legal question, counsel? Yeah. Okay. So $260,000 was 08. 07, she came up with 405, right? So in looking at, making a determination as to maintenance, is the court limited at looking at the most recent year, or can the court look at a trend of years? Well, to some extent they can look at trend. But the most recent, I mean, the petition alleges a substantial change in circumstances and talks about the most recent events. But if we look at 2007, a tremendous amount of money was given for the children in 2007. It was given by his parents, a lot more than. It was $408,000. But over $100,000, maybe even $120,000, was apparently given to him by his father, because in 2007 they had two kids in college. And they don't anymore. So he had $408,000 of income, and now he no longer has, he only has one kid in school. Yeah, but the monies were given for specific purposes. Can you draw a conclusion that he's, that if Todd drops out of college, that his father's still going to be giving him those monies? I mean, 90% of the monies that were given over a period of years, 90% of it was given exclusively for purposes related to the children's education or attorney's fees. And hopefully he's not going to have any more attorney's fees if the litigation ends. And as far as the children are concerned, what was the last time one of these cases ended? Okay. So he might get some, but I know for a fact that he's not going to get any more for attorney's fees from his father. And I know for a fact that the father is going to give him no more money, because at this point he'll probably pay Todd's tuition directly, because if it runs through him, it's all of a sudden, it's considered his income. It's considered William's income. And that's what happened. Okay. Anything else? Just the fact that the trial court based its decision, and it's clear from its opinion, on that $260,000, less $108,000. And what I'm saying is that she just ignored three very, very important things, because that basically left him nothing. And since she made a finding that this is enough for his expenses, then obviously that was a concern of the court and a concern of the appellate court. When you made your decision, this should be enough to meet his needs. Well, I think I've pointed out that it can't possibly meet his needs, because he has these other expenditures. Some of the money comes in, goes right out, and the other, it's the same money, the same money that earns the interest that was included as income, that creates the obligation of interest being paid out. The net amount, it takes it away. So you subtract those three items I talked about, which are shown by the record clearly as being items, nothing made up. The record clearly reflects those expenditures. You subtract them, all he's got left is $3,985 or something like that. And that's it. Thank you very much. Thank you. This case will be taken under advisement, and we are adjourned.